UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
SHAGANG SHIPPING CO. LTD.,

                               Plaintiff,

      – against –

EASTERN MEDIA INTERNATIONAL CORP., and
FAR EASTERN SILO AND SHIPPING (PANAMA) S.A.

                             Defendants.
------------------------------------------------------------------- X

ECF CASE

**INDEX NO.**

**VERIFIED COMPLAINT**

      Plaintiff Shagang Shipping Co. Ltd. ("Shagang") by its attorneys Nicoletti Hornig & Sweeney, as and for its Verified Complaint herein against Defendants Eastern Media International Corp. ("EMIC"), and Far Eastern Silo and Shipping (Panama) S.A. ("Far Eastern"), alleges upon information and belief as follows:

## JURISDICTION

      1.    This is an action that comes within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333 and that alleges admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

## PARTIES

      2.    Shagang is, and was at all relevant times, a corporation organized and existing under the laws of some foreign jurisdiction, with an office in Unit 2902, 29/F Far East Finance Center, 16 Harcourt Road, Hong Kong.

      3.    Shagang is, and was at all relevant times, the disponent owner of the M/V DAYTONA.

4. EMIC is, and was at all relevant times, a corporation organized and existing under the laws of some foreign jurisdiction, with an office located at 5th Floor, 368 Fu Hsing South Road, Section 1, 106 Taipei, Taiwan

5. At all relevant times, EMIC was the charterer of the M/V DAYTONA.

6. Far Eastern is, and was at all relevant times a corporation organized and existing under the laws of some foreign jurisdiction with an office located at c/o Eastern Media International Corp. ("EMIC") 5th Floor, 368 Fu Hsing South Road, Section 1, 106 Taipei, Taiwan.

7. As set forth in the accompanying Affidavit In Support of Issuance of Process of Maritime Attachment and Garnishment Pursuant to Rule B and Appointment of Special Process Server, Defendant EMIC cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## MARITIME CONTRACT

8. On or about September 25, 2008, Shagang, as disponent owner, and EMIC, as charterer, entered into a charter party contract (the "Charter Party"), whereby EMIC hired the M/V DATONA for a period of 82 – 86 months, with a laycan between November 15, 2008 to January 15, 2009.

9. EMIC requested the laycan be postponed to April 1, 2009 – May 31, 2009.

10. After negotiations with EMIC, Shagang agreed to EMIC's request, provided EMIC compensate Shagang for USD $3,000,000.00, payable in two installments of $1,500,000.00. EMIC agreed to these terms.

11. EMIC prepared an Addendum recording the relevant agreed upon terms, memorializing the dates of November 17, 2008 and March 17, 2009 as the payment due dates for each installment. (Exhibit A)

12. EMIC forwarded the Addendum it had prepared to Shagang, but failed to sign. EMIC followed with email communications indicating that it assented to the agreement. (Exhibit B)

13. On or about November 13, 2008, Shagang sent to EMIC its Remittance Information, in order to be timely paid by EMIC under the agreed upon terms of the Addendum.

## AS AND FOR A FIRST CAUSE OF ACTION

14. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "13" of this Complaint as if fully set forth herein.

15. Defendant has failed to pay the sum ($1,500,000.00) owing to Plaintiff for the first installment.

16. Plaintiff has demanded payment from Defendant the sum due. Despite having made due demand, EMIC, in breach of the agreement between the parties, has refused or otherwise failed to pay the amounts due and owing to Plaintiff.

17. By reason of EMIC's breach of the parties' agreement, Plaintiff will avail itself of all of its legal and contractual remedies including, but not limited to, arbitration in London.

18. Interest, costs, and attorneys' fees are routinely awarded to the prevailing party in London arbitration governed by English law.

19. Plaintiff is entitled to an award of costs and fees in the amount of $300,000.00, as near as can now be estimated.

20. Plaintiff is entitled to an award of interest, at a rate of 9% per year, for two years in the amount of $270,000, as near as can now be estimated.

21. Defendant has failed to pay the aforementioned amounts due and owing to Plaintiff.

22. Plaintiff reserves the right to increase the amount claimed should the amount set forth herein be insufficient to fully secure its claims against Defendant.

23. Plaintiff Shagang brings this action under 9 U.S.C. § 8 seeking security in the total amount of $2,070,000.00 for its claim, inclusive of interest, costs and attorneys' fees, while reserving its right to arbitrate in London. This Court should retain jurisdiction for purposes of enforcing the final London arbitration award.

### AS AND FOR A SECOND CAUSE OF ACTION (ALTER EGO)

24. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "23" of this Complaint as if fully set forth herein.

25. On or about November 16, 2008, Defendant EMIC sent to Plaintiff's managers, an email request for arrangement of remittance of funds. EMIC requested that Plaintiff adjust its invoice to the attention of "Far Eastern Silo and Shipping (Panama) S.A." its wholly owned subsidiary, for the express purpose of flouting Taiwanese domestic regulations regarding funds remittances with China, Hong Kong & Macau, and undermining Taiwanese tax laws. (Exhibit B)

26. EMIC has posted on its official corporate website (www.emic.com.tw) that the purpose of establishing its wholly owned Panamanian subsidiary was to use flag of convenience vessels to carry goods between Mainland China and Taiwan. EMIC posts in its

4

corporate timeline repeated reinvestments into the parent company by the Panamanian subsidiary. (Exhibit C)

27. Upon information and belief, the assets of Far Eastern and EMIC are intermingled and hence, each should be liable to Plaintiff for all amounts claimed herein.

28. Far Eastern and EMIC are and were, at all relevant times, alter egos of one another and should be held liable to Plaintiff for all amounts claimed herein.

29. Upon information and belief, Far Eastern is a shell corporation which is dominated and controlled by EMIC, in disregard of corporate formalities and corporate separation, all for the purpose of hindering and avoiding EMIC's legal obligations as a Taiwan based company, and, hence, they each should each be liable to Plaintiff for all amounts claimed herein.

30. **WHEREFORE**, Plaintiff Shagang Shipping Co. Ltd. prays that the Court:

a. Issue process of maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to attach the tangible and intangible property of Defendants EMIC, and Far Eastern, if said Defendants cannot be found within the District, up to and including the amount sued for herein;

b. Retain jurisdiction to enter judgment in favor of Plaintiff Shagang Shipping Co., Ltd. on any award rendered in the London arbitration;

c. Condemn and sell the tangible and intangible property of Defendants EMIC, and Far Eastern to satisfy the judgment; and

    d. Award such other and further relief as the Court may deem just, equitable, and proper.

Dated: New York, New York
   January 6, 2009

                Respectfully submitted,

                NICOLETTI HORNIG & SWEENEY
                *Attorneys for Shagang Shipping Co., Ltd.*

By: _____
   James F. Sweeney, Esq. (JS 7745)
   Wall Street Plaza
   88 Pine Street, Seventh Floor
   New York, New York 10005
   Telephone: 212-220-3830
   (Our file number: 99000026)

## VERIFICATION

STATE OF NEW YORK      )
                                              ) ss.:
COUNTY OF NEW YORK  )

JAMES F. SWEENEY, being duly sworn, deposes and says:

That he is an attorney admitted to practice before the Courts of this State and a member of the firm of NICOLETTI HORNIG & SWEENEY, attorneys for Plaintiff herein.

That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged on information and belief and as to those matters, he believes them to be true.

Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the matters set forth in the Verified Complaint in the possession of deponent.

_____
JAMES F. SWEENEY

Subscribed and sworn to before me
this 6th th day of January 2009

_____
Notary Public

ROSEMARIE RUSSO
Notary Public, State of New York
No. 01RU4634359
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires Dec. 31, 20__

7

# EXHIBIT A

# Addendum No. 1

For Charter Party of SWS No. 1128 dated 22/July/2008

It is on this day of 13/November/2008 mutually agreed between Shagang Shipping Company Limited, as Owners and Eastern Media International Corporation, as Charterers as below:

-The contract vessel with Hull No.1128 (M/V 'Daytona') to be replaced by SWS sistership of Maltese flag built 2009 - DWT about 177,000mt on about 18.322m ssw draft and otherwise as per M/V Daytona's description

-Lay/can 1/April/2009-31/May/2009, 0001/2400 hours local time respectively. The vessel shall be delivered to the Charterers upon the Owners taking the vessel from the yard. No commercial voyage to be performed by the Owners. Owners option to give earlier delivery if yard delivers earlier.

-The Charterers to compensate and pay lump sum USD 3,000,000.00 (USD Three Million only) to the Owners nominated bank account. The payment of such amount shall be divided into two equal payments on 17/November/2008 and 17/March/2009, each payment is USD 1,500,000.00 respectively.

-Otherwise as per terms/conditions/exceptions /details including but not limited to the hire and Time Charter period of the Charter Party dated 22/July/2008.

| Charterers | Owners |
|---|---|
| (signed)................... | (signed)................... |
| For and on behalf of | For and on behalf of |
| Eastern Media International Corporation | Shagang Shipping Company Limited |

# EXHIBIT B

## Nathaniel Eichler

**From:** Ocean Robin - Joanna [ops@oceanrobin.cn]
**Sent:** Sunday, November 16, 2008 9:46 PM
**To:** winerxu; chartering@shashipping.com
**Cc:** ???-ocean robin
**Subject:** MV Shangang TBN /EMIC cp dd 22 July 2008 - Invoice - 1st compensation
**Importance:** High

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Ocean Robin Shipping Holding Corp
Tel:   86-10-58790606
Fax:   86-10-58790625
Email: ops@oceanrobin.cn
       hdy@oceanrobin.cn
       pmax@oceanrobin.cn
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Winer/Joanna

Gday

RE: M/V DAYTONA / EMIC -- CP DD 22 JULY 2008

FLWG WE RCVD FM CHARTRS.

QTE.

Attn: Messrs Shen Wen Fu, the Managing Director and Winer Xu
c/o: Wisdom Marine
From: Eastern Media International Corporation
Date: 17/Nov/2008

RE: MV Shangang TBN /EMIC cp dd 22 July 2008
    Invoice - 1st compensation

Noted Owners' mail of the relevant debit note for the subject. Kindly be noted The said "Debit Note" should be replaced by the title of "Invoice" as per Taiwan Domestic regulation.

Charterers had drafted the governing addendum for the agreement as attachment number 1. Please kindly review and confirm the draft by return for signature ASAP in order to avoid any delay in arrangement of payment of the 1st compensation.

Charterers are arranging fund for remittance of the above payment to be made after Owners' signature of the addendum. Meantime, as per charterers' advice before, due to the amount restriction of remittance destined China, Hongkong & Macao from Taiwan as per Taiwan's domestic regulation, Charterers

had thus asked Owners to provide a banking account out of China, Hongkong and Macao.

In addition to this restriction, there're provisions in the tax laws that require us to withhold 20% as income tax for any payment of income earned from Taiwanese companies by any Chinese company, i.e. $3 million * 20% = $0.6 million, Owners will be receiving only $2.4 million.
The relevant regulations are as per attachment number 2 and 3.

Therefore, in order to avoid those regulations and thus solve those problems, Owners are kindly requested to agree with Charterers' name "Far Eastern Silo and Shipping (Panama) S.A." which is Charterers' 100% owned Panamanian subsidiary and guaranteed by EMIC in the C/P and addendum and further addenda, if any. If the charterers' name is so changed, all the remittances in the future will be made by the Panamanian subsidiary, there won't be any problem of amount restriction, nor problem of withholding income tax.

If Owners so agree, they're kindly requested to present their new Invoice which is with attention to "Far Eastern Silo and Shipping (Panama) S.A.", and brokers are required to amend the charter parties.

Regards

UNQTE.

B.rgds/Joanna Zhang
Tel:    86-10-58790606
Mob:   86-13910829582
Msn:   wsxph@hotmail.com
Skype: joanna_zhangnan
Address: 2212A, Building 1, Kuntai International Mansion,Yi/No.12 Chaowai Street,Chaoyang District,Beijing 100020

1/6/2009

# EXHIBIT C



## Around the World, We Are Everywhere

In 1981, most ocean-going bulk carriers of Taiwan were old and could not function properly. Delayed shipment and mechanical failure appeared to be the norm of those days in the shipping industry. Crops were moist due to the delays and shortages in shipment were normal. This caused heavy loss to owners of goods. As such, the related industries decided to solicit a pool of funds and place a new building order with China Shipbuilding Corporation to build a new large bulk vessel. This move contributed to owners of goods to properly control shipping schedules and the cycle time to market.

In consideration of global competition, and the government policy of allowing flag of convenience vessels to carry goods between Mainland China and Taiwan, the company established a wholly owned subsidiary in Panama with the aim to expand the scale of the marine transport operation and to minimize operation expenses. In addition, the company also placed orders for new building vessels with Hitachi Zosen Corporation, Jiangnan Shipyard (Group)

Co., Ltd., Imabari Shipbuilding Co. etc. in order to speed up and realize the above expansion scheme. In principle, Taiwan serves as the home base for the fleets. The other main market is the Asia Pacific (Mainland China, Indonesia, and Malaysia), and also covering the Atlantic and Indian oceans.

The company operates seven Panamax size bulk cargo ships and engages in marine transport services with both its own fleet and leased vessels. The company is one of the most active shipowners as well as ship operators engaging in seaborne dry bulk transportation in Taiwan. It also involved in the trading business of sea vessels.

Welcome to EMI Web Site Copyright 2003 Eastern Media



# Milestones

- 1975 Far Eastern Silo Corporation (the "Company") was founded.
- 1980 The grain silos in Kaohsiung began service.
- 1981 The grain silos in Taichung began service;
  - Grain Union Transport Ltd. was established.
- 1986 The first Panamax size bulk carrier named Grain Union was built.
- 1989 The Company took over Grain Union Transport Ltd.
- 1994 The subsidiary Far Eastern Silo & Shipping Int'l (Bermuda) Ltd. was founded.
- 1995 Stocks listed on Taiwan Stock Exchange;
  - The Company was renamed as Far Eastern Silo & Shipping Corporation;
  - Direct investment for the establishment of Eastern Multimedia Co., Ltd.;
  - The Bermuda subsidiary reinvested in the establishment of Shanghai Haixing Yuanchang International Logistics Co., Ltd.;
  - Engaged in realty development business.
- 1996 The subsidiary Far Eastern Silo & Shipping (Panama) S.A. was founded.
- 1998 Invested in Eastern Broadcasting Co., Ltd. (ETTV).

Eastern Media International Corporation-About EMI-Milestones

- 1999 The loading/unloading of coal wharf in Keelung began service;
- 2000 The company was renamed as Eastern Media International Corporation.
  - The subsidiary Eastern Media International (Hong Kong) Ltd. was founded.
  - Engaged in trading of bulk grains.
- 2002 Engaged in developing and trading of consumer products.
- 2005 The company was renamed as Eastern Media International Corporation.
  - The Panama subsidiary reinvested in the establishment of EMI Schiffaht GmbH.
- 2006 The Panama subsidiary reinvested in the establishment of Eastern Enterprise Development (Shanghai) Co., Ltd.

Welcome to EMI Web Site Copyright 2003 Eastern Media